## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STEVE ROBERT DURAN,

      Petitioner,

vs.                                                              No. CIV 10-0743 JB/GBW

ERASMO BRAVO, Warden,
Guadalupe County Correctional
Facility, and GARY KING, New Mexico
Attorney General,

      Respondents.

### ORDER OVERRULING OBJECTIONS AND ADOPTING
### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on: (i) the Magistrate Judge's Proposed Findings and Recommended Disposition, filed May 26, 2011 (Doc. 31)("PFRD"); (ii) the Petitioner's Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition, filed September 21, 2011 (Docs. 51, 51-1, 51-2, 51-3, 51-4, 51-5, 51-6, 51-7)("Objections"); and (iii) the Motion for Reconsideration of Doc. 31 (PFRD), Petitioner Move's [sic] the Magistrate Court to Amend or Modify Doc. 31 Before a De Novo Review by the District Court for a Final Determination, in Light of Doc. 35, Which Was Not Available and Would Have Supported Docs. 1 and 20, and Would Have Opposed the Findings of Doc. 31, filed January 6, 2012 (Doc. 58)("Motion for Reconsideration of the PFRD").  As required, the Court has conducted a de novo review of those portions of the PFRD to which Petitioner Steve Robert Duran objected.  See Garcia v. City of Albuquerque, 232 F.3d 760, 766-67 (10th Cir. 2000).  The primary issues are whether the Honorable Gregory B. Wormuth, United States Magistrate Judge, erred when he found: (i) that an evidentiary hearing is unnecessary; (ii) that the Supreme Court of New Mexico did not unreasonably

apply Supreme Court of the United States precedent regarding Duran's right to a speedy trial; (iii) that the Supreme Court of New Mexico did not unreasonably apply Supreme Court precedent regarding the lack of certain DNA evidence at Duran's trial; (iv) that the Supreme Court of New Mexico did not unreasonably apply Supreme Court precedent regarding exclusion of certain evidence; (v) that the Supreme Court of New Mexico did not unreasonably apply Supreme Court precedent to determine that a violation of the Fifth Amendment to the United States Constitution was harmless error; (vi) that the Supreme Court of New Mexico did not unreasonably apply Supreme Court precedent to determine that a violation of the Confrontation Clause, contained in the Sixth Amendment to the United States Constitution, was harmless error; (vii) that the Supreme Court of New Mexico did not unreasonably apply Supreme Court precedent regarding due process and the treatment of witnesses; (viii) that the Supreme Court of New Mexico did not unreasonably apply Supreme Court precedent regarding prosecutorial misconduct; (ix) that the Supreme Court of New Mexico did not unreasonably apply Supreme Court precedent regarding insufficient evidence; (x) that the Supreme Court of New Mexico did not unreasonably apply Supreme Court precedent regarding ineffective assistance of counsel; and (xi) that the Court should dismiss the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed August 6, 2010 (Doc. 1)("Petition").  The Court agrees with the Judge Wormuth's analysis and recommendations. The Court will overrule the Objections and adopt the PFRD.  The Court likewise denies the Motion for Reconsideration of the PFRD.  Accordingly, the Court will dismiss the Petition.

## **FACTUAL BACKGROUND**

Given the exhaustive factual and procedural background supplied in the PFRD, the Court will only briefly summarize this Petition's background.  See PFRD at 1-12. Duran was found guilty of Murder in the First Degree, Possession of Methamphetamine, Possession of Heroin, Possession

of Drug Paraphernalia, and Felon in Possession of a Firearm.  See PFRD at 11.  For those crimes, Duran was sentenced to a term of life imprisonment plus eighteen-and-one-half years.  See PFRD at 11-12.  Over the next four years, Duran's case was affirmed on direct appeal and his state habeas petitions were denied.  See PFRD at 12.

On August 6, 2010, Duran filed his federal habeas petition.  See PFRD at 12.  The Court referred this matter to Judge Wormuth for proposed findings and a disposition.  See Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, Non Prisoner Pro Se Cases and Immigration Habeas Corpus Proceedings at 1, filed August 10, 2010 (Doc. 3).  On May 26, 2011, Judge Wormuth issued a PFRD recommending that the Court deny the Petition with prejudice.  See PFRD at 1.  On August 22, 2011, Duran filed a motion to supplement his petition.  See Motion to Supplement Unexhausted and Procedurally Defaulted Claims and Exhibits for "Fundamental Error Review" to Doc. 20, Petitioner's Amended Pleading's [sic] to Federal Writ of Habeas Corpus 28 U.S.C. § 2554, filed August 22, 2011 (Doc. 49)("Motion to Supplement").  Judge Wormuth  issued a separate PFRD recommending denial of the Motion to Supplement because of timeliness and because of Duran's failure to exhaust many of the additional claims.  See Proposed Findings and Recommended Disposition on Petitioner's Motion to Supplement, filed October 31, 2011 (Doc. 54)("Motion to Supplement PFRD").   On September 21, 2011, Duran filed his Objections to the Judge Wormuth's first PFRD.  See Objections at 1.  The Objections span over 300 handwritten pages.

During the pendency of the Court's ruling on the Objections, Petitioner also filed the Motion for Reconsideration of the PFRD.  See Doc. 58.

## LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS
## <u>AND RECOMMENDATIONS</u>

District courts may refer dispositive motions to a magistrate judge for a recommended disposition.  <u>See</u> Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . .").  <u>Accord</u> Mar. 30, 2011 MOO at 2-5.  Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  Finally, when resolving objections to a magistrate judge's proposal: "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

"'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'"  <u>United States v. One Parcel of Real Property, with Buildings, Appurtenances, Improvements, and Contents, Known as: 2121 East 30th Street, Tulsa, Okla.</u>, 73 F.3d 1057, 1059 (10th Cir. 1996)("<u>One Parcel</u>")(quoting <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985)).  As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act,

including judicial efficiency." One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793

F.2d 1159, 1165 (10th Cir. 1986), superseded by statute on other grounds as stated in De Vargas v.

Mason & Hanger-Silas Mason Co., 911 F.2d 1377 (10th Cir. 1990); United States v. Walters, 638

F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit has held "that a party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the

district court or for appellate review." One Parcel, 73 F.3d at 1060.  "To further advance the policies

behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, ha[s] adopted 'a firm

waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or

recommendations waives appellate review of both factual and legal questions.'"  One Parcel, 73

F.3d at 1059.

In One Parcel, the Tenth Circuit, in accord with other courts of appeals, expanded the waiver

rule to cover objections that are timely but too general.  See One Parcel, 73 F.3d at 1060.  The

Supreme Court of the United States -- in the course of approving the United States Court of Appeals

for the Sixth Circuit's use of this waiver rule -- noted:

>   It does not appear that Congress intended to require district court review of
> a magistrate's factual or legal conclusions, under a de novo or any other standard,
> when neither party objects to those findings.  The House and Senate Reports
> accompanying the 1976 amendments do not expressly consider what sort of review
> the district court should perform when no party objects to the magistrate's report.
> See S.Rep. No. 94-625, pp. 9-10 (1976)(hereafter Senate Report); H.R.Rep. No.
> 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter
> House Report).  There is nothing in those Reports, however, that demonstrates an
> intent to require the district court to give any more consideration to the magistrate's
> report than the court considers appropriate.  Moreover, the Subcommittee that
> drafted and held hearings on the 1976 amendments had before it the guidelines of the
> Administrative Office of the United States Courts concerning the efficient use of
> magistrates.  Those guidelines recommended to the district courts that "[w]here a
> magistrate makes a finding or ruling on a motion or an issue, his determination
> should become that of the district court, unless specific objection is filed within a

reasonable time." <u>See</u> Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis added) (hereafter Senate Hearings).  The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice.  <u>See</u> <u>id</u>. at 11 ("If any objections come in, . . . I review [the record] and decide it.  If no objections come in, I merely sign the magistrate's order").  The Judicial Conference of the United States, which supported the de novo standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report.  <u>See</u> Senate Hearings, at 35, 37.  Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review.  There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed.  It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort.  We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

<u>Thomas v. Arn</u>, 474 U.S. at 151-52 (footnotes omitted).

The Tenth Circuit has noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'"  <u>One Parcel</u>, 73 F.3d at 1060 (quoting <u>Moore v. United States</u>, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations."  (citations omitted))).  <u>Cf</u>. <u>Thomas v. Arn</u>, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, <u>sua</u> <u>sponte</u> or at the request of a party, under a de novo or any other standard").  In <u>One Parcel</u>, the Tenth Circuit also noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal, because

such action would advance the interests underlying the waiver rule.  See 73 F.3d at 1060-61 (citing cases from other circuits where district court elected to address merits despite potential application of waiver rule, but circuit court opted to enforce waiver rule).

In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996).  See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").  In an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate."  Pevehouse v. Scibana, 229 F.App'x 795, 796 (10th Cir. 2007)(unpublished).

## ANALYSIS

Duran's filing consists of nearly 300 pages.  The Court spent considerable time reviewing the Objections and experienced great difficulty, given that several of Duran's objections referenced multiple claims and did not clearly delineate between the case law he was citing and the facts of his case.  The Objections contain, however, a limited number of statements -- viewed under the liberal standard applicable to pro se objections -- that can reasonably be considered substantive objections to the PFRD.  As the claims fail for varying reasons, the Court arranges them categorically and addresses them by categories.

## I.    THE COURT OVERRULES THE INCOMPREHENSIBLE OBJECTIONS.

The first set of Duran's Objections can be described as those that are attempts to object, but which are incomprehensible.  The first such occurrence is when Duran apparently objects to the order in which the PFRD addressed his claims.  "Petitioner asserts this Court should rule on all his

claims governing priority to dismiss relief first . . . . And then rule on all other claims whether habeas relief is granted or denied."[1]  Objections at 3.  The Court is unable to discern what is meant by "claims governing priority to dismiss relief."  Later in his filing, Duran "asserts that Magistrate Judge construed Motion to unexhausted claims rather than procedurally defaulted claims . . . failed to object and preserve several issues for appellate review."  Objections at 55 (citation omitted). Likewise, the Court is unable to decode what specifically Duran says was mishandled and how. Given their incomprehensibility, the Court overrules these objections.

## II.   THE COURT OVERRULES THE OBJECTIONS WITH LITTLE SUPPORT OR ANALYSIS.

A second series of Duran's Objections consists of those objections that state no more than his disagreement with a finding or with the analysis in the PFRD.  Objections to a Magistrate Judge's proposed findings and dispositions must be made with specificity; general or conclusory objections are insufficient.  See United States v. 2121 E. 30th St., 73 F.3d 1057, 1060-61 (10th Cir. 1996).  Although pro se filings are read liberally with regard to this requirement, they are not exempt from it.  See Price v. Reid, 246 F.App'x 566, 569 (10th Cir. 2007)("It is settled law in this circuit, that in order to preserve an objection to a magistrate judge's report for appellate review, the appellant must make a 'timely and specific' objection in the district court."); Zumwalt v. Astrue, 220 F.App'x 771, 777-78 (10th Cir. 1999)(unpublished)(rejecting appealability of an insufficient, pro se objection).

Duran states the following as an objection to the PFRD: "Petitioner objects to Magistrate Judge's findings and recommendations that he finds the N.M.S.C. decision on this claim was not

---

[1]Duran uses an apostrophe to offset the "s" in most words ending in that letter, regardless whether it is a possessive or a conjunction.  He also puts many single words in quotation marks out of an apparent confusion over their proper use.  For clarity of reading, when quoting Duran herein, the Court omits his superfluous marks.

an unreasonable application of clearly established Supreme Court precedent or based on an unreasonable determination of facts 28 U.S.C. § 2254(d)." Objections at 68. While Duran cites and quotes cases, their connection to the objection is not discernable.[2]  Arguably, this "objection" is insufficient to mandate a de novo review.[3]  Lockert v. Faulkner, 843 F.2d 1015, 1019 (7th Cir.1988)(quoted with approval in United States v. 2121 E. 30th St., 73 F.3d at 1060-61)("[A]n objection stating only 'I object' preserves no issue for review.").  Assuming, however, that it is sufficient to object to the PFRD's analysis of the exclusion of evidence, the Court has reviewed the PFRD's analysis on this point and agrees with it.  Therefore, the Court overrules this objection.

Another similar example is found in Duran's response to the Judge Wormuth's rejection of the claim of ineffectiveness of counsel based upon not asking certain impeachment questions of a state witness, Mary Finnell.  See Objections at 217.  Judge Wormuth opined that Duran's counsel, Gary Mitchell, made a relatively strong cross-examination of Finnell.  See PFRD at 80-81. Petitioner disputes this characterization and identifies another question that he believes Mr. Mitchell could or should have asked.  See Objections at 217.  Having reviewed the cross-examination and the analysis in the PFRD, the Court finds this objection without merit.  The Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), does not "guarantee perfect representation, only a 'reasonably competent attorney.'" Harrington v. Richter, 131 S.Ct. 770, 791 (2011).  The Court will therefore overrule this objection.

The Court further finds that Duran asserts several new arguments for the first time in his

---

[2]This deficiency appears repeatedly in other "objections."  Objections at 87, 252, 256, 268, 271.

[3]It is apparent from reviewing Duran's other objections that he is capable of presenting detailed arguments in support of his objections where he thinks such an argument is warranted.

Objections.  In his Objections, Duran adds claims under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963),[4]

that: (i) the prosecution waited until the day of trial to disclose favorable DNA evidence; and (ii) a

tape-recording of law enforcement interviews with Kermit Kwasigroch, who was deceased at the

time of trial, were not disclosed before trial.  <u>See</u> Objections at 49-50, 62.  Duran also adds a claim

that his trial was rendered fundamentally unfair, because, during voir dire, the prosecutor "tainted

their perception to C.S.I. Forensic evidence" when he referred to the television show <u>C.S.I.: Crime</u>

<u>Scene Investigation</u> as "hogwash."  Objections at 199-201.  Theories "raised for the first time in

objections to the magistrate judge's report are deemed waived."  <u>Bahney v. Janecka</u>, 365 F.App'x

941, 944 (10th Cir. 2010)(unpublished)(dismissing an appeal from the district court, where the

district court denied the habeas petition and dismissed the petitioner's case).  To the extent that these

new claims are objections to the PFRD, the Court will overrule these objections.

## III.   THE COURT OVERRULES DURAN'S OBJECTIONS REGARDING DNA TESTING.

Perhaps the single greatest subset of Duran's Objections relate to the delayed testing of

certain DNA evidence.  Unlike the majority of Duran's claims, the facts surrounding the DNA

evidence are significant to his objections and thus merit repetition.  As part of the evidence

presented against Duran, the State showed photographs of an apparently extensive amount of blood

present in and on his car.  <u>See</u> PFRD at 10.  The State submitted that evidence for testing by a

laboratory in Tennessee.  <u>See</u> PFRD at 20-21.[5]  As a result of the State's contract with that

---

[4]In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court explained that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

[5]The prosecutor explained that, due to an overload of work, the New Mexico crime laboratory had outsourced the materials in Duran's case to a Tennessee crime laboratory.  <u>See</u> PFRD at 20-21.

laboratory expiring, however, a number of items were returned untested and required re-submission following the establishment of a new testing contract.  See PFRD at 21.

Multiple times in the course of the litigation, Duran and the State jointly stipulated to continuances of his trial pending completion of those tests and receipt of the results.[6]  See PFRD at 19-21.  In the end, however, the results were not obtained before Duran's trial.  See PFRD at 21.  Following the trial, the state court ordered that the testing be completed.  See PFRD at 13 n.7.  The results[7] were not made available to Duran until after his state habeas proceedings had concluded.  See PFRD at 13 n.7.

### A.    THE COURT WILL OVERRULE THE OBJECTIONS RELATING TO THE DNA EVIDENCE ITSELF.

Duran cites to the unavailability of the DNA evidence in numerous ways in his Objections to the PFRD.  Specifically, Duran contends that Judge Wormuth erred, because: (i) Judge Wormuth should not put the burden of testing on him where the State promises to test evidence, see Objections

---

[6]The first continuance was not related to the attempts to test the DNA evidence.  See PFRD at 19.  Rather, the first continuance occurred when the parties realized that the original forecast of a one-day trial would be too short of a time.  See PFRD at 19.  This reason is significant, because in the time that elapsed because of the first continuance, a witness that Duran intended to call died.  See PFRD at 25 n.14.  While Duran does not object to Judge Wormuth's determinations on this point -- opting instead to list off the same legal arguments that he presented to Judge Wormuth without objecting specifically to anything -- this fact undermines Duran's oft-repeated point that the delay in testing hindered his defense.  To the extent that any of Duran's objections relate to that concept, they are overruled on this point alone.

[7]The results were not for what Duran apparently hoped.  Throughout his appeals, Duran contended that the evidence would have shown that the blood in his car was only his and, by his logic, that would prove that he had not murdered the victim.  See, PFRD at 10 n.4.  Instead, the results indicated that the blood inside of the vehicle was both Duran's and the victim's.  See PFRD at 13 n.7.  Mr. Mitchell argued to the jury in explaining the significance of the unavailable blood testimony, if the blood in the car was just Duran's, he was innocent; "if it's [the victim's], then he's guilty."  PFRD at 11.  As the PFRD points out, however, the results were not before the state court, so they must have no bearing on this Court's review of the state court's decision.  Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011)("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

at 44; (ii) Duran refrained from testing the blood only because of the State's promise to test it, see Objections at 24; (iii) Duran disagrees that the absence of DNA evidence could be used as support in his defense, see Objections at 46; (iv) Duran believes that testing was delayed, because the State did not want the truth at trial, see Objections at 52; and (v) his counsel was ineffective in relying on the State to test the blood instead of ordering the testing himself, see Objections at 227. Having reviewed these objections and the analysis in the PFRD on this point, the Court finds these objections lack a sound basis in the facts in the applicable law.  Duran could have had the blood tested himself, before trial.  There is no evidence that the State suppressed any evidence in violation of Brady v. Maryland, and, in certain circumstances, a reasonable attorney could choose not to test DNA evidence.  See Harrington v. Richter, 131 S.Ct. at 789-90 ("Even if it had been apparent that expert blood testimony could support Richter's defense, it would be reasonable to conclude that a competent attorney might elect not to use it.").  Furthermore, the Supreme Court has noted that "[u]nlike DNA testing, which may yield exculpatory, incriminating, or inconclusive results, a Brady claim, when successful postconviction, necessarily yields evidence undermining a conviction: Brady evidence is, by definition always favorable to the defendant and material to his guilt or punishment." Skinner v. Switzer, 131 S.Ct. 1289, 1300 (2011).  Accordingly, the Court finds that Judge Wormuth did not err in concluding that the Supreme Court of New Mexico did not unreasonably apply Supreme Court precedent when it determined that the absence of certain DNA evidence from Duran's trial did not state a constitutional violation.  The Court will therefore overrule these objections.

### B.  THE COURT WILL OVERRULE THE OBJECTIONS BASED ON IMPACT OF THE DELAY ON DURAN.

Duran's other objection to the PFRD regarding DNA is that the mere waiting for the DNA

evidence caused prejudice to him.  Duran contends that: (i) the consideration of the impact of the delay on his defense is inseparable from the impact of not having the DNA evidence on hand, see Objections at 27; (ii) his stipulation to being unprejudiced by delay was only his way of saying that jail time would not impact him personally and not that it would not impact his defense, see Objections at 29; and (iii) it is wrong to consider him to be complicit in the delay, because he was relying upon the State's promises, see Objections at 25.  Duran also argues that his trial should have commenced in August 2004 -- six months after he waived his right to an arraignment -- pursuant to N.M.R.A. 5-604.  See Objections at 17.  Duran asserts that the delay resulted in extreme prejudice to his defense, because of the death of a favorable witness during the interim.  See PFRD at 25 n.14.[8]

        None of these objections convince the Court that the PFRD's analysis and conclusions with respect to the trial delay are erroneous.  The Supreme Court has long held that "there is no fixed point" at which a delay becomes "too long" and violates a defendant's right to a speedy trial.  Barker v. Wingo, 407 U.S. at 521.  Accordingly, that Duran's original trial date perhaps should have been set for August 2004 does not change the analysis of the Barker v. Wingo factors.  Most significantly, as Judge Wormuth noted, the first delay in trial scheduling was not because of the DNA testing question, but rather occurred as a result of the parties' mutual realization that they would need more time to conduct the trial itself.  See PFRD at 19.  That delay had no connection to the DNA testing.

---

        [8]Duran also makes several allegations suggesting that it would be unethical for the Tennessee DNA testing facility to stop testing DNA related to criminal cases when its contract with New Mexico expired.  See Objections at 21.  Duran further asserts that "it is not far-fetched under the circumstances for Petitioner to claim that Perhaps [sic] this DNA evidence could have been altered or tampered with in the delay to test it."  Objections at 39.  The Court finds that these allegations are speculation which cannot support a habeas petition.  See Rodriguez v. Roberts, 371 F.App'x 971, 976 (10th Cir. 2010)(unpublished)("Others, such as Rodriguez's allegation that the prosecutor fabricated evidence, are speculation."); United States v. Fabiano, 42 F.App'x 408, 413 (10th Cir. 2002)(unpublished)("The general claim that an unidentified expert could have testified that any number of internet problems could have prevented him from receiving e-mail messages is too speculative to support habeas relief.").

See PFRD at 19.  The death of the witness whose testimony Duran states would have led to his acquittal occurred during that first delay.  Duran cannot soundly use the death of that witness to show prejudice from the DNA-related delays.  Furthermore, on the issue of the pretrial delay of Duran's trial, the Court adopt the PFRD's analysis and conclusions.  The police "do not have a constitutional duty to perform any particular tests," Arizona v. Youngblood, 488 U.S. 51, 59 (1988), and Duran stipulated that delaying his trial while awaiting DNA testing would not prejudice him, see PFRD at 24.  Duran argues that he "did not expressly stipulate that he would not be prejudiced from presenting [a] defense if hampered by delay, rather he expressed no prejudice from pretrial incarceration."  Objections at 29.  Duran's stipulation, however, stated only that "[he] is in jail but is not prejudiced by a six (6) month extension."   State v. Duran, No. 29,824, Decision at 10 (Supreme Court of New Mexico)(December 18, 2008), filed September 13, 2010 (Doc. 10-4)("NMSC Decision")(alteration original).  The Court finds that it was not unreasonable for the Supreme Court of New Mexico to find that the prejudice resulting from a trial delay is separate from the prejudice resulting from the State's failure to test DNA and that his stipulation precluded a finding that his speedy trial right was violated when the State failed to test the blood.  See NMSC Decision at 7.  Accordingly, the Court overrules these objections.

## IV.   THE COURT WILL OVERRULE THE OBJECTIONS RELATED TO THE STANDARD OF REVIEW.

Several of Duran's objections concern the deference that Judge Wormuth gave to the holding on claims presented to the state court.  See, e.g., Objections at 14 ("Further, the N.M.S.C. did not consider Petitioner's Confrontation Clause claim (5) on direct appeal and failed to address this claim on the merits.").  In particular, Duran argues that many of his claims have not been "adjudicated on the merits" and, therefore, the state court determinations on those claims do not require deference.

Where a state court has decided the petitioner's claims on the merits, federal habeas relief is permissible only where the state court decision was either "contrary to, or . . . an unreasonable application of, clearly established Federal law," or if the decision was produced by "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Decision on the merits, as referenced in section 2254(d), "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. at 786.  Where the state court does not present a justification, "a habeas court must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Harrington v. Richter, 131 S. Ct. at 788.

Duran's first objection centers on the summary denial of his state habeas petition.  He appears to contend that, because the state court did not write out a formal discussion of why it rejected his claims, Judge Wormuth erred by giving any deference to the State's rejection of his arguments.  See Objections at 76.  This argument is incorrect.  The State is not required to explain every determination that it makes, and the task of this Court is solely to ask whether the failure to accept Duran's arguments is clearly inconsistent with precedent.  See Harrington v. Richter, 131 S. Ct. at 786.  Furthermore, the state court, when denying his state habeas petition, specifically stated that it "promptly examined the Petition, together with all attachments," and held that "it plainly appears from the face of the Motion, annexed exhibits, and prior proceedings, that the movant is not entitled to relief as a matter of law."  Duran v. Bravo, No. D-0905-CR-0200400126, Order at 1-2, (dated February 1, 2010), filed September 13, 2010 (Doc. 10-6)("State Habeas Denial").  This holding demonstrates that the state court was deciding the merits of Duran's state habeas petition.

-15-

Because the Court agrees with both Judge Wormuth's analysis of <u>Harrington v. Richter</u> and his analysis of the State's treatment of Duran's claims, this objection is overruled.  Duran also objects, because he believes that the fact that he now possesses the DNA test results means that the state court did not address his specific questions about the failure to test the DNA on the merits.  <u>See</u> Objections at 220-21.  In fact, the state court addressed and rejected Duran's argument that he was prejudiced by the unavailability of the DNA results despite recognizing that the test results were "potentially exculpatory."[9]  NMSC Decision at 10.  The state court adjudicated his claim on the merits, and it is entitled to deference under the federal habeas statute.

Duran further asserts that he brought his Confrontation Clause on direct appeal, citing to his brief-in-chief.  <u>See</u> Objections at 99 (citing <u>State v. Duran</u>, No. 29,824, Defendant Appellant Steve Robert Duran's Brief-in-Chief at 46-50 (Supreme Court of New Mexico)(April 11, 2008), filed September 13, 2010 (Doc. 10-2)("Brief-in-Chief").[10]  In his Brief-in-Chief, however, Duran focused on the argument that he and Finnell were "treated unequally on the stand," because Duran was only able to elicit from Finnell that she had been convicted of an unnamed prior felony, while, on the other hand, the State was permitted to "elicit the highly prejudicial facts that he had been previously convicted, specifically, of voluntary manslaughter and battery on a police officer."  Brief-in-Chief

---

[9]The Court is now aware, of course, that the results were not exculpatory.  <u>See</u> <u>supra</u> n.7, at 11.

[10]Duran also raises this argument on page 16 of his Objections.  There, Duran notes that Judge Wormuth found that Duran had not raised his Confrontation Clause claim on direct appeal and that Judge Wormuth cites to pages 46 to 50 of the Brief-in-Chief.  <u>See</u> Objections at 16 (citing PFRD at 18).  Duran asserts that he "cites the record differently because he cites from exhibits Doc. 10 that were provided by respondents" and points the Court to document 10, exhibit I, pages 40 to 44.  Objections at 16.  Duran and Judge Wormuth are citing to the same passages of the Brief-in-Chief.  Duran refers to the Brief-in-Chief's original page numbers from its submission to the Supreme Court of New Mexico, while Judge Wormuth refers to the CM/ECF page numbers. Pages 40 to 44 in the original pagination are the same as pages 46 to 50 in CM/ECF pagination.  The Court will refer to the CM/ECF pagination when it cites to the Brief-in-Chief.

at 47-48.  Although Duran mentioned that the trial court had prohibited him from inquiring into Finnell's pending charges, he did not argue that this violated the Confrontation Clause and focused on the inequity of admitting the names of his prior convictions.  See Brief-in-Chief at 46, 48-50.  Judge Wormuth thus correctly determined that Duran did not raise his Confrontation Clause claim on direct appeal.  Accordingly, the Court will overrule these objections.

## V.   THE COURT WILL OVERRULE DURAN'S OBJECTIONS RELATED TO HIS REQUESTS FOR AN EVIDENTIARY HEARING.

Duran also frequently attempts to assert points that he believes require that the Court grant an evidentiary hearing.  The recent case of Cullen v. Pinholster prohibits consideration of evidence that was not in the record of the state proceedings where the state court adjudicated a claim on the merits.  See Cullen v. Pinholster, 131 S.Ct. at 1401.  As discussed earlier, the state court adjudicated the claims for which Duran seeks an evidentiary hearing on the merits.  Conducting an evidentiary hearing would therefore be futile, because any evidence so obtained could not be considered.  The Tenth Circuit has recognized that, after Cullen v. Pinholster, an evidentiary hearing which "seeks to place additional evidence before the federal district court that was not part of the record before the state court" is not permitted.  Kirby v. Attorney Gen. Ex. Rel. N.M., No. 11-2082, 2011 WL 4346849, at *11 (10th Cir. Sept. 19, 2011)(unpublished).  Accordingly, the Court will deny Duran's requests for a hearing and will overrule any objections based upon such requests.

## VI.   THE COURT WILL OVERRULE ANY OBJECTIONS RELATED TO THE SUFFICIENCY OF EVIDENCE ON THE CONVICTION FOR FIRST DEGREE MURDER.

Duran objects to the analysis in the PFRD regarding the sufficiency of the evidence for his conviction for first degree murder.  See, e.g., Objections at 159.  Duran first restates his argument that he could not be guilty of first-degree murder having been acquitted of armed robbery.  See

Objections at 59.  Because the Court agrees with the PFRD's analysis of this issue, the Court will overrule this objection.

Duran next argues that, because there was evidence of a struggle, the killing which occurred could not have risen to the level of first-degree murder.  See Objections at 161-62.  Under New Mexico law, "first-degree murder [is] 'any kind of willful, deliberate and premeditated killing.'" State v. Gallegos, 149 N.M. 704, 708, 254 P.3d 655, 659 (2011)(citing N.M.S.A. 1978, § 30-2-1(A)(1)).  That a struggle occurred before or during the killing does not mean that the jury could not have reasonably found that Duran committed first-degree murder.  The Court will therefore overrule this objection.

Duran also asserts two objections pertaining to the interaction between armed robbery and murder in the context of his verdict, see Objections at 159, and in the context of the jury instructions, see Objections at 242.  Essentially, this pair of objections is derived out of Duran's stance that, if he did not commit armed robbery, he could not have committed felony murder.  This argument does not accurately reflect either the jury's verdict options or Judge Wormuth's conclusions.

While felony murder is a basis for first-degree murder, deliberate intent murder is also a theory of first-degree murder.  See State v. Fry, 138 N.M. 700, 710, 126 P.3d 516, 526 (2005)("Both felony murder and deliberate intent murder are different theories of a single crime, first degree murder.").  Thus, regardless whether the jurors believed that he had attempted to commit armed robbery, Duran could still be convicted of first-degree murder, if the jury believed he intended to kill the victim.  As Judge Wormuth noted, the jury's verdict could mean that it did not believe that Duran showed up with the intent to take the victim's money.  See PFRD at 71-72.  The Court will

also overrule these objections.[11]

## VII.   THE COURT WILL OVERRULE THE OBJECTIONS RELATED TO THE HARMLESSNESS OF TWO ALLEGED ERRORS.

There were two constitutional errors committed during the course of Duran's trial: (i) the trial court erred in admitting statements that Duran made in a custodial interview before receiving his Miranda v. Arizona[12] warnings; and (ii) the trial court erred when it prohibited Duran from exploring the possible bias of witness Mary Finnell and any agreement she might have made with the state to exchange her testimony for favorable treatment on pending criminal charges.  See PFRD at 38-39, 50-52.   Judge Wormuth found that the Supreme Court of New Mexico did not unreasonably apply Supreme Court precedent when it found that each of these errors was ultimately harmless.  See PFRD at 42-43, 52.

### A.   THE COURT WILL OVERRULE THE OBJECTION REGARDING THE ALLEGED VIOLATION OF MIRANDA V. ARIZONA.

The Supreme Court of New Mexico found that the trial court erred in admitting one of Duran's statements.  See PFRD at 39.  Specifically, in the time between Duran's crime and his

---

[11]With respect to his sufficiency-of-the-evidence argument, Duran also makes arguments related to other grounds from his Petition.  See Objections at 162 ("Petitioner asserts he was deprived of a defense to contradict the State's evidence in this case, by Presenting [sic] witness's statements and testimony.  Petitioner was deprived of fully cross-examining key witness Mary Finnell as to bias.").  Because those arguments go to other constitutional grounds, which the Court addresses elsewhere in this memorandum opinion and order, the Court will not address those claims at this time.

[12]Miranda v. Arizona, 384 U.S. 436,478–79 (1966)(holding that, "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized," and stating that "[p]rocedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored," law enforcement officers must warn the individual that he has the right to remain silent, that he has the right to the presence of an attorney, and that, if he cannot afford an attorney, one will be appointed for him).

capture, he dyed his hair a shade of orange.  <u>See</u> PFRD at 4.  When he was arrested, the officer asked

him why he had changed his hair color.  <u>See</u> PFRD at 38.  Duran responded that he dyed his hair

because he knew the officers were looking for him.  <u>See</u> PFRD at 38.  Because the Supreme Court

of New Mexico found that Duran was in custody and that the question constituted interrogation, the

admission of this statement violated <u>Miranda v. Arizona</u>.  <u>See</u> PFRD at 38-39.  Nonetheless, the

Supreme Court of New Mexico held that its admission of the statement was a harmless error,

because the testimony was cumulative of other evidence already properly before the jury.  <u>See</u> PFRD

at 39-42.

Duran argues that the Supreme Court of New Mexico mishandled this analysis of

harmlessness, because it "never fully weighed the importance of the second factor" of the factors

under <u>Delaware v. Van Arsdall</u>, 475 U.S. 673 (1986).  <u>See</u> Objections at 91 (referencing the

cumulative factor of the test in <u>Delaware v. Van Arsdall</u>, 475 U.S. at 684).  Duran is incorrect.  The

Supreme Court of New Mexico devoted substantial space in its opinion to explaining that other

evidence -- both direct and circumstantial -- was already properly before the jury that went to the

facts surrounding Duran's appearance changing while on the run.  <u>See</u> NMSC Decision at 20-22.

With respect to the fifth factor under <u>Delaware v. Van Arsdall</u>, Duran "objects" that the state's case

was overall a strong one.  Objections at 87.  Here, Duran combines his <u>Miranda v. Arizona</u> argument

and his Confrontation Clause argument to assert that Finnell's testimony cannot be used to measure

the strength of the state's case.  <u>See</u> Objections at 88.  Finnell's testimony was, however, properly

admitted.  Duran also argues that his statement was a confession and that admitting a confession is

not harmless error.  <u>See</u> Objections at 81 (citing <u>Lynumn v. Illinois</u>, 372 U.S. 528, 537 (1963)).  Not

every statement in violation of <u>Miranda v. Arizona</u> amounts to an involuntary confession, however,

and the Supreme Court of New Mexico appropriately applied the harmless-error standard to its

review of this error.  See Neder v. United States, 527 U.S. 1, 18 (1999)("The erroneous admission of evidence in violation of the Fifth Amendment's guarantee against self-incrimination . . . [is] subject to harmless-error analysis under our cases."); United States v. Hudson, 102 F.App'x 127, 134 (10th Cir. 2004)(unpublished).  Habeas relief is only proper if a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).  Judge Wormuth found, and the Court agrees, that the Supreme Court of New Mexico's analysis of the Miranda v. Arizona violation was not unreasonable. See PFRD at 40.  Accordingly, the Court will overrule this objection.

### B.    THE COURT WILL OVERRULE THE OBJECTIONS RELATED TO THE PENDING CHARGES AGAINST MARY FINNELL.

As discussed in the PFRD, the state trial court refused to allow Mr. Mitchell to cross-examine one of the prosecution's witnesses regarding criminal charges that were pending at the time of trial.  See PFRD at 45.  In his state habeas petition, Duran challenged this ruling.  See Duran v. Bravo, No. D-0905-CR-0200400126, Petition for Writ of Habeas Corpus at 5-8 (dated January 7, 2010), filed September 13, 2010 (Doc. 10-5)("State Habeas Petition").  The state court denied that petition, see State Habeas Denial at 1-2, and the Supreme Court of New Mexico denied Duran's petition for writ of certiorari on that order, see Duran v. Bravo, No. D-0905-CR-0200400126, Order at 54 (dated May 25, 2010), filed September 13, 2010 (Doc. 10-7)("NMSC Cert Denial").  Judge Wormuth concluded that this ruling constituted an unreasonable application of federal constitutional precedent.  See PFRD at 49-52.  Judge Wormuth examined whether this error was harmless.  See PFRD at 52-58.  Duran objects to Judge Wormuth's conclusion that the error was harmless. See Objections at 119-20.

Duran disputes the conclusion that this error was harmless, because of an interrelationship

between the prohibited cross-examination and an audio recording of Finnell taken at the scene.  See Objections at 115-19.  Duran's argues that, taken together, Finnell's testimony would have been "eviscerated."  Objections at 115-19.  Duran explains that, if the jury knew about Finnell's pending charges, it would have concluded that her recorded statement to the officer was a lie designed to garner favorable disposition on the pending charges.  This argument does not withstand scrutiny, for two reasons.

The audio recording to which Duran refers is from the responding officer's dashboard recorder.  See PFRD at 54-55.  The recorder captured the original officer's interview of Finnell, which occurred on January 13, 2004.  See PFRD at 54-55.  The first flaw in Duran's argument is that, at the date of the recorded statement, Finnell had no charges pending against her.  See PFRD at 55.  It is unlikely that Finnell would have been lying to police to garner favorable treatment on charges which had not been brought against her at that time.  Second, the audio recording has significant indicia of reliability.  As Judge Wormuth noted: "Finnell can also be heard sobbing, screaming, and describing Duran's vehicle for police."  PFRD at 55.  If the jury had heard about Finnell's pending charges, it is unlikely they would conclude that her statement was calculated to obtain favorable treatment.  Moreover, Duran has failed to explain why Finnell would have believed that implicating him falsely would lead to favorable treatment for her.[13]  Because the Court declines to accept Duran's argument and finds Judge Wormuth's analysis on the issue of harmlessness persuasive, the Court overrules this objection.[14]

---

[13]Additionally, as explained in the PFRD, other evidence corroborated Finnell's statement. See PFRD at 54-55.

[14]Duran also contends that failure to ask the questions at issue in this analysis constituted ineffectiveness on the part of his trial counsel.  See Objections at 210.  Because ineffectiveness of counsel requires prejudice, and because the Court finds that constitutional prejudice does not arise from harmless error, the will also overrule this objection.

Next, Duran seems to contend that the federal "harmless error" concept is inapplicable to his case.  Objections at 93 ("Does the Federal law supersede the State law harmless error analysis, on a review of the N.M.S.C. Application of this claim?").  Duran is mistaken.  Duran has brought his claim under 28 U.S.C. § 2254.  Section 2254 petitions for writs of habeas corpus are granted only where incarceration of an individual is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C §2254(a).  See Flourney v. McKune, 266 F.App'x 753, 756 (10th Cir. 2008)(unpublished)("Of course, relief can be granted under 28 U.S.C. § 2254 only for violations of federal law, not state law.").  Accordingly, by the statute's clear wording, the federal interpretation of harmless error applies.  The Court therefore overrules this objection.

Duran further objects to Judge Wormuth's analysis that other evidence corroborated Finnell's testimony, because "Robert Judd identified Petitioner in court almost 2 years later . . . without any pretrial or post homicide identification procedures e.g. police line up," and because "Rosa Lucero was a hearsay witness on material points of Finnell's testimony."  Objections at 103-04.  Duran does not, however, correctly evaluate the weight of this evidence.  The Court agrees with Judge Wormuth's analysis of the corroborating evidence, see PFRD at 53-54, and therefore overrules this objection.

## VIII.   THE COURT OVERRULES THE OBJECTION RESPECTING PEREMPTORY CHALLENGE USAGE.

Two of Duran's objections to the PFRD focus on Judge Wormuth's analysis of Duran's argument that Mr. Mitchell was ineffective for failing to challenge prospective jurors in voir dire.

Duran first contends that Judge Wormuth was incorrect in stating that Mr. Mitchell "actively" used his peremptory challenges.[15]  Objections at 232.  Duran objects saying, that his

---

[15]One of Judge Wormuth's reasons for concluding that Mr. Mitchell was not ineffective was his "active" involvement in voir dire.  PFRD at 88 (noting that counsel exercised ten of the twelve

attorney challenged one juror for cause, but then did not strike that juror with a peremptory challenge.  See Objections at 232.  Even accepting this point, Duran's objection does not undermine Judge Wormuth's analysis on this point.  See PFRD at 86-89 .  The Court sees such practices frequently; sometimes, a lawyer will challenge a potential juror for cause because of school conflicts, childcare issues, or other hardships, but once the Court overrules the challenge, is otherwise content to have the juror sit on the case.  Mr. Mitchell could also have viewed the juror he attempted to strike for cause as a better juror for his client than other prospective jurors remaining in the venire at the time of peremptory challenges.  This strategic process is firmly within the wide latitude given attorneys during a trial.  See United States v. Taylor, 832 F.2d 1187, 1196 (10th Cir. 1987)("[T]he use of peremptory challenges to construct a fair and impartial jury panel will normally fall squarely within the realm of a tactical trial decision.").  Accordingly, this objection is overruled.

Duran also argues that Judge Wormuth was wrong to find that it was not error for his jury to have several jurors with friends or family connected to law enforcement.  See Objections at 233. The Court finds those objections lack a sound basis in the law and finds Judge Wormuth's reasoning persuasive.  See Sedillo v. Hatch, 445 F.App'x 95, 101 (10th Cir. 2011)(unpublished).  Many in society have a relative or close friend who works for or has worked for law enforcement.  Many with connections to law enforcement state that -- and the Court believes them -- they will be fair and impartial; there is no per se rule against law enforcement sitting as jurors on a criminal case, and the courts and parties have to make such judgments -- as with most jurors -- on an individual basis. Accordingly, the Court overrules this objection as well.

## IX.    THE COURT WILL OVERRULE THE MISCELLANEOUS OBJECTIONS.

Several of Duran's objections are unrelated to any of the aforementioned subsets.  Each of

_____

challenges that he was permitted).

-24-

these objections also lacks a sound basis in the facts and under the applicable law.

First, Duran objects to how Judge Wormuth addressed what the State contended was a "subconscious confession" by Duran at trial.  Objections at 150-51.  Essentially, in closing argument, the prosecutor played a clip of Duran's testimony and argued that Duran had said "I shot him."  Petition at 21-23.  Duran contends that he actually said "the guy shot him."  Petition at 21-23.  In rejecting this argument, Judge Wormuth noted that a court reporter did not transcribe the trial, but rather an audio system recorded the proceeding.  See PFRD at 68 n.40.  As a result, the official record in this case comes from the recordings and not from a written transcript.  See PFRD at 68 n.40.  Duran argues that the "transcript" produced for his appeal supported his version and that, therefore, the prosecutor had acted improperly by proposing a different phrasing.  Objections at 150-51.  As Judge Wormuth noted, however, the transcript to which Duran refers expressly states on its first page that it is not the official record and that only the recordings are official.  Because the Court agrees with Judge Wormuth's analysis, the Court overrules this objection.

Second, Duran objects to Judge Wormuth's analysis that a witness' statement to the police, who was deceased at the time the trial commenced, and an anonymous person's statement in a police report were inadmissible hearsay.  See Objections at 69, 262.  He asserts that the "State's evidentiary ruling of excluding the corroborating defense hearsay evidence 'rendered the trial so fundamentally unfair as to constitute a denial of federal constitutional rights."  Objections 69 (citing Elliott v. Williams, 248 F.3d 1205, 1214 (10th Cir. 2004).  Duran's objection lacks a sound basis in the facts and the applicable law, and the Court will overrule it.

Finally, with respect to the alleged unequal treatment of Duran and Finnell on the stand, Duran argues that the trial judge should have objected "on his own accord" to the prosecutor's baiting Duran into disclosing the details of his prior convictions and that the motion in limine

permitting the prosecution to introduce the names of Duran's prior convictions for impeachment

purposes "cannot be construed that he was not treated unfairly on the stand compared to Mary

Finnell." Objections at 123, 127. As the PFRD points out, Mr. Mitchell did not, however, attempt

to elicit the names of Finnell's prior convictions on the stand, and Duran testified, without objection,

to the details of his prior convictions. See PFRD at 59-60. The Court agrees that the Supreme Court

of New Mexico did not unreasonably apply Supreme Court precedent with respect to this argument.

The Court has often noted in its previous cases that a defendant may open the door to certain

evidence, which would otherwise be excluded, through his responses to certain questions. See

United States v. Jim, No. 10-2653, 2012 WL 592862, at *1 (D.N.M. Jan. 07, 2012)(Browning,

J.)("The Court will order Plaintiff United States of America not to introduce evidence of Defendant

Derrick Ivan Jim's criminal history, except to impeach after a witness makes a statement

inconsistent with his history. Jim should be careful not to open the door to this evidence in his

examinations."). Accordingly, the Court finds that this objection lacks a sound basis in the facts and

the applicable law and will overrule it.

## X.    THE COURT WILL OVERRULE DURAN'S OBJECTIONS REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL.

Duran also objects on a multitude of grounds to Judge Wormuth's analysis of his ineffective-

assistance-of-counsel claims. With respect to the DNA evidence which was introduced at trial,

namely the blood from his clothing that did not match the victim, Duran argues that Mr. Mitchell

was ineffective for failing to suppress such evidence. See Objections at 199. He objects to Judge

Wormuth's finding that the DNA results helped Duran's case and argues that "[i]t is a blood link,

even though it did prove victims blood was not on his clothes," which permitted the jury to picture

"petitioner fleeing the crime scene covered with blood." Objections at 199. The Court agrees with

-26-

Judge Wormuth that there are "reasonable arguments both that Duran's counsel's performance was objectively reasonable and that any deficient performance did not meet the <u>Strickland</u> standard for prejudice."[16]  PFRD at 76.  The Court would have difficulty finding that any counsel who permitted evidence which established that the victim's blood was <u>not</u> on the defendant's bloody clothes objectively unreasonable.  Accordingly, the Court will overrule the objection.

Duran next argues that he objects to Judge Wormuth's conclusion that it was not unreasonable to deny his ineffective assistance-of-counsel claim, where Mr. Mitchell failed to move to sever the drug charges.  <u>See</u> Objections at 206.  Duran argues that the evidence of his drug usage allowed the jury to view him as a "persona non grata" and distracted the jury from the elements of first-degree murder.  Objections at 202.  Judge Wormuth found that it would have been reasonable for the Supreme Court of New Mexico to find that any motion to sever would be denied, given that the charges were based on a series of acts connected together, such that Mr. Mitchell did not act in an objectively unreasonable manner and did not prejudice Duran.  <u>See</u> PFRD at 79.  The Court agrees with Judge Wormuth and further finds that it is unlikely that Duran could show prejudice, because, even if the drug charges were severed, his drug use might still have been admissible. <u>See</u> <u>State v. Litteral</u>, 110 N.M. 138, 142, 793 P.2d 2686, 273 (1990)("However, our review of the record reveals no abuse of discretion by the trial court in admitting any of the challenged evidence.

---

[16]In <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984), the Supreme Court established a two-part test for determining whether a criminal defendant's counsel was ineffective:

> First, the defendant must show that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair [proceeding] . . . .

<u>Strickland v. Washington</u>, 466 U.S. at 687.

The evidence of drugs, paraphernalia, and drug connections between defendant and the victim were probative and relevant to the establishment of a motive for the killing . . . .").   Accordingly, the Court will overrule this objection.

Duran objects to Judge Wormuth's recommendation that Mr. Mitchell was not ineffective for failing to elicit the name of Finnell's prior convictions.   See Objections at 210 ("Petitioner knows counsel could not be found ineffective for a ruling by the Court, but certainly counsel was ineffective for failing to inquire into the name of her prior felony's [sic], which the court did not prohibit counsel from eliciting.").   As the PFRD notes, Mr. Mitchell actively cross-examined Finnell.   See PFRD at 81.   The Court agrees that such a decision does not fall outside the "wide range" of reasonably competent assistance demanded of attorneys practicing criminal law.   Montez v. Wyoming, 431 F.App'x 750, 753 (10th Cir. 2011)(unpublished).   The Court will therefore overrule this objection.

Duran also objects to Judge Wormuth's finding that Harrington v. Richter "virtually foreclose[s]" Duran's argument that his counsel was deficient for failing to have the remaining DNA samples tested.   Objections at 220.   In Harrington v. Richter, the Supreme Court recognized that "[t]o support a defense argument that the prosecution has not proved its case it sometimes is better to try to case pervasive suspicion of doubt than to strive to prove a certainty that exonerates."   131 S.Ct. at 790.   Duran argues that the DNA evidence from his truck was exculpatory, even though he admits that the results also contained "inculpatory [evidence] on two blood smears."   Objections at 220-21.   Although under Cullen v. v. Pinholster, the Court cannot rely on evidence not before the state court, the Court simply notes that in hindsight Mr. Mitchell appears to have wisely not objected to the exculpatory DNA evidence and not pushed too hard for tests which would have resulted in inculpatory evidence.   See 131 S.Ct. at 1398.   Accordingly, the Court will overrule this objection.

With respect to his ineffective-assistance-of-counsel arguments related to his speedy trial rights, Duran objects to Judge Wormuth's conclusion that the failure to test the DNA evidence after stipulating to a waiver of his speedy trial rights does not constitute ineffective assistance.  See Objections at 224.  Judge Wormuth found that defense counsel could have pursued any one of three strategies and that Mr. Mitchell chose the second: to "give the state one continuance for the purpose of testing the blood," so that there the defense either had the results or had a strong insufficient investigation argument.  PFRD at 84.  Duran argues that his counsel "failed with his unsound second strategy."  Objections at 226.  This argument is the hindsight analysis that the Supreme Court has sought to avoid.  See Welch v. Workman, 639 F.3d 980, 1011 (10th Cir. 2011)("The Supreme Court requires we make 'every effort . . . to eliminate the distorting effects of hindsight. . . .'").  Because, after reviewing Duran's objections, the Court agrees that Mr. Mitchell did not err, if at all, so seriously in this regard so as to undermine Duran's Sixth Amendment protections, the Court will overrule this objection.

Finally, Duran objects to Judge Wormuth's conclusion that it was not ineffective for his counsel to fail to introduce evidence of excessive-force allegations against one of the investigating officers.  See Objections at 273 ("Petitioner asserts that he sent Mr. Mitchell newspaper clippings of Officer Yoakum's charges of intimidation of a witness and being accused from the inside by his fellow police officers.").  Judge Wormuth found that Duran had failed to show prejudice on this point.  See PFRD at 105-06.  After reviewing Duran's objections, the Court agrees that Duran has failed to satisfy the prejudice prong.  The Court will therefore overrule this objection.

## XI.   THE COURT WILL OVERRULE DURAN'S OBJECTIONS BASED ON CUMULATIVE ERROR.

Duran objects based upon Judge Wormuth's lack of discussion of the cumulative impact of

the errors on the fairness of his trial.  <u>See</u> Objections at 277-78.  Judge Wormuth did not discuss cumulative error, because, in his extensive one-hundred-seven-page PFRD, he found few errors, none of which caused prejudice.  Because the Court adopts Judge Wormuth's reasoning in his PFRD, the Court too finds that what errors existed were harmless and too limited in number to constitute cumulative error.  Accordingly, the Court will overrule this objection.

A similar concept applies to Duran's tendency to repeat all claims as ineffective-assistance-of-counsel claims as well.  <u>See</u>, <u>e.g.</u>, Objections at 228 (arguing that Judge Wormuth should not consider both an ineffectiveness claim and a claim under <u>Miranda v. Arizona</u> as one item).  Just as with the cumulative error concept, for the ineffectiveness arguments to succeed, errors first have to occur.  Because few of Duran's arguments demonstrated error, and because the Court rejects those few that occurred as a basis for ineffectiveness of counsel, the Court also overrules all of Duran's remaining ineffectiveness arguments arising out of his other objections.

## XII.   THE COURT WILL DENY DURAN'S MOTION FOR RECONSIDERATION.

While the Court's decision on Duran's objections was pending, Duran moved the Court to reconsider the PFRD based upon material not offered to the Court before the PFRD.  <u>See</u> Motion for Reconsideration of the PFRD at 2.  Duran's Motion for Reconsideration of the PFRD is premised upon his belief that transcripts included in the supplemental record in this case -- items that were filed after the PFRD -- prove that his aforementioned point regarding the "subconscious confession," was correct.  Motion for Reconsideration of the PFRD at 2-3.  Specifically, Duran alleges that the transcripts prove that he testified that "the guy" shot the victim and not that Duran said he himself shot the victim.  Motion for Reconsideration of the PFRD at 2-3.

Just like Duran's objections related to this issue, this stance is erroneous.  As Judge Wormuth noted, the transcripts of the proceedings expressly state that the audio recordings of the proceedings

-30-

are the official record.  Duran does not -- and cannot -- effectively counter that fact.  Thus, even if

Judge Wormuth had the contents of the Respondents' Notice Re: Filing of "Unofficial" Transcripts,

filed July 12, 2011 (Doc. 35), before it at the time that the PFRD was written, the Court's analysis

would not differ.  Accordingly, the Court will deny Motion for Reconsideration of the PFRD.

Because the Objections that are discernable in Duran's filing lack of a sound basis in the

facts and in the applicable law, the Court will overrule the Objections.

**IT IS ORDERED** that: (i) the Petitioner's Objections to the Magistrate Judge's Proposed

Findings and Recommended Disposition, filed September 21, 2011 (Docs. 51, 51-1, 51-2, 51-3, 51-

4, 51-5, 51-6, 51-7), are overruled; (ii) the Magistrate Judge's Proposed Findings and Recommended

Disposition, filed May 26, 2011 (Doc. 31), are adopted; (iii) the Motion for Reconsideration of Doc.

31 (PFRD), Petitioner Move's [sic] the Magistrate Court to Amend or Modify Doc. 31 Before a De

Novo Review by the District Court for a Final Determination, in Light of Doc. 35, Which Was Not

Available and Would Have Supported Docs. 1 and 20, and Would Have Opposed the Findings of

Doc. 31, filed January 6, 2012 (Doc. 58), is denied; and (iv) the Petition under 28 U.S.C. § 2254 for

Writ of Habeas Corpus by a Person in State Custody, filed August 6, 2010 (Doc. 1), is dismissed

with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel*:

Steve Robert Duran
Northeast New Mexico Detention Facility
Clayton, New Mexico

     *Plaintiff pro se*

Gary K. King
   Attorney General for the State of New Mexico
Margaret E. McLean
   Assistant Attorney General
Santa Fe, New Mexico

   *Attorneys for the Defendants*